# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Timothy John Kraig,** | **Case No. 1:21CV1253** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge Amanda M. Knapp** |
| **Kilolo Kijakazi,**<br>**Acting Commissioner of Social**<br>**Security** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

This matter is before the Court on the Objections of Plaintiff Timothy John Kraig ("Plaintiff" or "Kraig") to the Report and Recommendation of Magistrate Judge Amanda M. Knapp regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. Nos. 13, 14.) For the following reasons, Plaintiff's Objections (Doc. No. 14) are overruled, the Report & Recommendation ("R&R") (Doc. No. 13) is accepted, and the Commissioner's decision is affirmed.

I.  Background

In November 2019, Kraig filed his applications for POD and DIB, alleging a disability onset date of September 12, 2018. (Doc. No. 7 (Transcript ["Tr."]) at 155, 179.) The applications were denied initially and upon reconsideration, and Kraig requested a hearing before an administrative law judge ("ALJ"). (Tr. 67-83, 103.) On November 13, 2020, the ALJ conducted a hearing at which Kraig was represented by counsel and testified. (Tr. 29-66.) A vocational expert ("VE") also

testified. (*Id.*) On November 30, 2020, the ALJ found that Kraig was not disabled. (Tr. 12-28.) The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. Kraig seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.)

The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation ("R&R"). The R & R concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed. (Doc. No. 13.) Kraig filed Objections, to which the Commissioner responded. (Doc. Nos. 14, 15.)

Kraig raises the following Objection to the Magistrate Judge's R&R: "The Magistrate Judge erred in her assertion that the ALJ applied proper legal standards and reached a decision supported by substantial evidence in finding NP Lavelle's opinion unpersuasive." (Doc. No. 14.) The Court has conducted a *de novo* review of this issue.

**II.     Standard of Review**

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1). *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). Consideration of disability claims follows a five-step review process.[1] 20 C.F.R. § 404.1520.

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). *See also Jones v. Comm'r of Soc. Sec.*, 815 Fed. Appx. 926, 929 (6th Cir. 2020).

---

[1] Under this five-step review, the claimant must first demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity, i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbot*, 905 F.2d at 923; *Jones*, 815 Fed. Appx. at 929.

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

### III. Relevant Facts[2]

#### A. Relevant Medical Evidence

The record reflects that Kraig sought psychiatric treatment in September 2018 for addiction to Ambien. (Tr. 237-238.) He reported a series of traumatic events dating back to 2012, including the unexpected deaths of his wife, brother, and a close friend. (*Id.*) Kraig was diagnosed with sedative use disorder (severe); sedative withdrawal; sleep disorder; insomnia; depression; and generalized anxiety disorder. (*Id.*) He was thereafter hospitalized for inpatient detoxification from September 12, 2018 to October 10, 2018. (Tr. 239.) Discharge notes indicate Kraig responded favorably to treatment and was discharged to an intensive outpatient therapy program. (*Id.*) He was prescribed Lexapro and Doxepine. (Tr. 367.)

---

[2] The Magistrate Judge's thorough recitation of the medical and opinion evidence will not be repeated in full and is incorporated herein. The Court only recites that evidence in this Opinion which is necessary to the resolution of Kraig's Objections.

Between November 2018 and August 2020, Kraig presented to various nurse practitioners for treatment and medication management. (Tr. 367-407, 447-453, 726-776.) In November 2018, Kraig reported feeling overwhelmed, restless, and irritable, and stated that he experienced racing thoughts, crying spells, and difficulty sleeping. (Tr. 368.) However, he also indicated that he was "feeling a lot better on his medications overall" and rated his anxiety a 5 to 6 out of 10 "most days" and his depression a 3 out of 10. (Tr. 367-368.) Treatment notes from November and December 2018 indicate largely normal mental status examination findings, including appropriate affect, normal memory, normal psychomotor activity, open and cooperative attitude, and good judgment and impulse control. (Tr. 374, 380.) These notes also indicate that Kraig's "[a]ttention/concentration is characterized by ability to attend and maintain focus." (*Id*.) At both of these visits, nurse practitioner ("NP") Saissy Kendig, PMHNP-BC assessed moderate symptoms and moderate impairment in functioning.³ (Tr. 373, 381.)

Kraig presented to NP Sandy Lavelle, PMHNP-BC in March, May, June and September 2019. (Tr. 386 -453.) In March 2019, he reported that his "mood has been very good" and that "he feels he is in a good place right now." (Tr. 386.) Mental status examination findings were normal, including normal attention/concentration. (Tr. 388.) In May 2019, Kraig reported anxiety in the afternoon and some insomnia. (Tr. 393.) His mental status examination findings were normal. (Tr. 396.) Kraig was continued on Lexapro and prescribed a higher dose of Doxepin. (Tr. 397.) The following month,

---

³ Specifically, NP Kendig identified the following "moderate" symptoms: anxiety and worry, brooding over the past, crying episodes, daytime fatigue and lack of energy, depressed mood, difficulty controlling the amount of worrying, difficulty falling asleep, difficulty maintaining sleep at least 7 nights per week, difficulty staying awake at work, diminished ability to feel pleasure, excessive worry and preoccupation over sleep, excessive inappropriate guilt, fatigue, feelings of being on edge, insecurity and uncertainty, irritability, less satisfying social interactions, and low self-esteem. (Tr. 373.) She also identified the following "moderate" impairments: inhibition in social situations, inability to work, difficulty completing activities of daily living, and difficulty having fun. (*Id.*)

Kraig reported that he was "doing well," stating that his "sleep is good"[4] and "his anxiety is under control." (Tr. 401.) Mental status examination findings were again normal, including normal attention/concentration. (Tr. 403.) In September 2019, Kraig reported that he was "doing well" and "staying active." (Tr. 447.) He reported no anxiety but was nonetheless prescribed Buspirone (in addition to Lexapro and Doxepin). (Tr. 449-450.) At each of these visits, NP Lavelle repeated the same "moderate" symptoms and impairments as set forth in NP Kendig's treatment notes. (Tr. 388-389, 396, 403-404, 449-450.)

In late 2019 and 2020, Kraig presented on several occasions to NP Stephen Pessefall, PMHNP-BC. (Tr. 726-776.) In December 2019 and January 2020, Kraig indicated that his mood was fair, his anxiety was "not too bad," and his "depressive/anxiety symptoms were well-controlled on Lexapro." (Tr. 734, 746.) In March 2020, he was getting 6 to 7 hours of sleep per night and was happy because his grandson was just born. (Tr. 760.) NP Pessefall discontinued Kraig's Lexapro and continued him on Doxepin and Buspirone. (Tr. 761.) In August 2020, Kraig was feeling lonely and sad because he had broken up with his girlfriend. (Tr. 774.) NP Pessefall resumed Kraig's Lexapro and encouraged individual grief therapy. (Tr. 775-776.) Each of NP Pessefall's treatment notes document largely normal mental status examination findings, including that Kraig was alert and well oriented with appropriate affect, good eye contact, normal speech, normal memory, normal psychomotor activity, normal thought content, open and cooperative attitude, good judgment and impulse control, and normal attention/concentration. (Tr. 728, 738, 751, 764.) Kraig's mood is

---

[4] In his Brief on the Merits, Kraig asserts that NP Lavelle's June 4, 2019 treatment note indicates that Kraig reported getting 7 hours of sleep but waking "at least nine times during the night." (Doc. No. 9 at p. 3.) This is a mischaracterization of the record. As the Magistrate Judge correctly notes, the June 4, 2019 treatment note indicates that Kraig reported getting 7 hours of sleep but that he gets up at least *one* time. (Tr. 402.)

6

variously described as fair (Tr. 734, 760), happy (Tr. 738, 750-751), congruent (Tr. 738, 750), and "happy, then sad" (Tr. 764.)

### B. NP Lavelle's Opinion

On October 7, 2019, NP Lavelle completed a Mental Medical Source Statement stating that she had met with Kraig every two or three months for 20-30 minutes for treatment of generalized anxiety disorder, major depressive disorder, insomnia, and sedative abuse, early remission. (Tr. 510.) She identified the following clinical findings that demonstrated the severity of Kraig's mental impairments and symptoms: "alert and oriented x4; proper dress and grooming; clear conversational communication without odd verbalizations; awareness of problems and consequences; continued anxiety; tearfulness; grief response; insomnia; and risk for relapse of sedative abuse." (*Id.*) NP Lavelle noted Kraig's "illness in all likeliness may be lifelong." (*Id.*)

With regard to his specific functional impairments, NP Lavelle opined that Kraig was "unable to meet competitive standards"[5] in his abilities to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) perform at a consistent pace without an unreasonable number and length of rest periods; (3) deal with normal work stress; (4) understand, remember, and carry out detailed instructions; (5) set realistic goals or make plans independently of others; and (6) deal with stress of semiskilled and skilled work. (Tr. 511-12.) She further opined that Kraig was "seriously limited, but not precluded"[6] in his abilities to: (1) remember work-like

---

[5] The Medical Source Statement states that the term "unable to meet competitive standards" means "your patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting." (Tr. 511.)

[6] The Medical Source Statement indicates that "seriously limited, but not precluded" means: "ability to function in this area is less than satisfactory, but not precluded in all circumstances. Individual would be limited in their ability to perform activity 15% of the time." (Tr. 511.)

7

procedures; (2) understand and remember very short and simple instructions; (3) maintain attention for two hour segment; (4) maintain regular attendance and be punctual within customary, usually strict tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or proximity to others without being unduly distracted; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (9) respond appropriately to changes in a routine work setting; and (10) be aware of normal hazards and take appropriate precautions. (Tr. 511.) Lastly, NP Lavelle opined that Kraig's impairments or treatment would cause "variable" absences from work (as many as three per week) and that he would likely be off-task 70% of an eight-hour workday. (Tr. 512.)

NP Lavelle explained that these limitations were based on her findings that Kraig experiences high anxiety, panic attacks, difficulty with memory, needs frequent reiterations of instructions and is easily overwhelmed. (Tr. 511.) She also opined Kraig was at a high risk for relapse of sedative abuse, especially due to his recent sobriety. (*Id*.) She indicated that Kraig struggled with critical thinking, problem solving, memory and impaired concentration, and that the skills needed to perform semiskilled and skilled work tasks would be hampered by these symptoms. (Tr. 512.)

### C. The ALJ Decision

At Step Three of the sequential evaluation, the ALJ found that Kraig's depressive disorder, anxiety disorder, and substance abuse disorder, considered singly and in combination, did not cause more than a minimal limitation in his ability to perform basic mental work activities and, therefore, are nonsevere. (Tr. 15.) The ALJ then discussed, at length, the record evidence relating Kraig's

8

mental health impairments. The ALJ first found that Kraig had either no limitations, or mild limitations, in the four broad functional areas of mental functioning, explaining as follows:

> In understanding, remembering, or applying information, the claimant has mild limitations. The claimant alleged that he has difficulty with memory generally into the afternoon hours (hearing testimony). However, the claimant also stated that he could prepare meals, pay bills and collect rents, go to doctor's appointments, take medications, shop, drive, read, play racquetball, and care for his 8-month old grandson (hearing testimony). In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers, and there is any [sic] mention of any issues with the claimant's short- or long-term memory (1F; 4F; 6F; 10F; 12F; 13F; hearing testimony).
>
> In interacting with others, the claimant has no limitations. The claimant did not allege any problems related to this domain. However, according to his statements, the claimant is also able to get along with others, shop, and spend time with friends and family. Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments (1F; 4F; 6F; 10F; 12F; 13F; hearing testimony).
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has mild limitations. The claimant contended that he has limitations in concentrating generally and focusing generally. On the other hand, the claimant said that he is also able to drive, prepare meals, watch TV, read, manage funds, and handle his own medical care and financial affairs (hearing testimony). Additionally, the record fails to show any mention of distractibility (1F; 4F; 6F; 10F; 12F; 13F; hearing testimony).
>
> Finally, the claimant has no limitations in his ability to adapt or manage himself. The claimant did not allege any symptoms or limitations that relate to this criterion. Furthermore, the claimant also stated that he is able to handle self-care and personal hygiene, care for his dogs, and care for his grandson (hearing testimony). Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control (1F; 4F; 6F; 10F; 12F; 13F; hearing testimony).

(Tr. 15-16.) The ALJ then discussed the medical evidence. The ALJ first detailed Kraig's September 12, 2018 psychiatric evaluation, as well as the medical records relating to his inpatient treatment and

outpatient group therapy. (Tr. 16-17.) The ALJ then discussed Kraig's treatment records with NPs Kendig and Lavelle, as follows:

> He also followed up for medical management services to manage his symptoms of depression, anxiety, and sleep issues to improve his quality of life in November 2018 (4F/2). He reported in December 2018 that he sold his dental practice and stated he felt like his anxiety will hopefully decrease, but also reported stressors including blending his family and stress from the board of dentistry and selling his house (4F/13). The claimant reported that the antidepressant was working fine but showed lack of insight into his dependency in a sleep aide, and denied any anxiety, suicidal or homicidal ideation, and reported stable appetite and weight (4F/13-14, 19). Treatment records noted that he was open and cooperative and verbalized awareness of problems, consequences, and causes; had good judgment; had ability to attend and maintain focu[s] with regard to attention/concentration; and was reflective and able to resist urges (4F/16).
>
> At a medication management follow up on March 8, 2019, the claimant reported his mood had been "very good" and reported he had been enjoying retirement since selling his dental practice (4F/21; 10F/33). The claimant reported that he was doing the steps necessary to get reinstated with his dentist license but was not sure he wanted to practice anymore (4F/21). He reported that his family was supportive and he felt he was in a good place after being on medication for six months (4F/21; 10F/33). Mental status exam findings were unremarkable and his medications were continued as prescribed (4F/21-27; 10F/33-35). In May 2019, the claimant's medications were adjusted and increased for insomnia and anxiety symptoms (4F/28-35). At a follow up in June 2019, he reported doing well and that his sleep was good and his anxiety was under control with prescribed medication (4F/36; 12F/19-25). In September 2019, the claimant reported that he was doing well and "staying active" and was taking a full Lexapro in the morning (7F/36; 10F/56-63; 12F/27-34).
>
> Mental status examination findings were generally unremarkable during the relevant period. Findings from mental status examinations noted he appeared alert; with appropriate affect; had good eye contact; speech was clear and conversational; recent and remote memory appeared normal; psychomotor activity was normal; his attitude was described as open and cooperative; judgment was good; he demonstrated ability to attend and maintain focus; and reported anxiety was "not too bad" (10F/6, 23; 12F).

(Tr. 17.)

The ALJ next discussed the opinion evidence relating to Kraig's mental impairments. (Tr. 17-18.) The ALJ noted that the State Agency consultants concluded that Kraig (1) did not have

limitations in interacting with others or adapting or managing himself; and (2) had no more than mild limitations in the areas of understanding, remembering, or applying information; and concentration, persistence, or pace. (Tr. 17.) The ALJ found these opinions to be persuasive because they were supported by, and consistent with, Kraig's treatment records and hearing testimony. (Tr. 17-18.)

The ALJ then evaluated NP Lavelle's October 2019 opinion as follows:

> I also note the file contains a check-list form titled Mental Medical Source Statement from Sandra Lavelle, PMHNP, dated October 7, 2019, which I do not find persuasive (5F/5-8; 6F/2-5; 7F/53-56). On the check-box form Ms. Lavelle checked boxes opining the claimant was mostly "seriously limited, but not precluded" or "unable to meet competitive standards" in most areas of "mental abilities and aptitudes needed to do unskilled work" and checked boxes opining the claimant would be "unable to meet competitive standards" in all areas of "mental abilities and aptitudes needed to do semiskilled and skilled work" (6F/4). She also checked boxes opining the claimant was "limited but satisfactory" in areas of "mental abilities and aptitude needed to do particular types of jobs" (6F/4). She also opined that the claimant "may have difficulty as much as 3 times a week or more" in answer to a question about how often the claimant's impairments or treatment would cause absence from work; and opined the claimant would be off-task from performing job tasks 70% on average (6F/4). **I do not find these opinions to be persuasive. Ms. Lavelle stated in a handwritten note that the claimant experienced high anxiety, panic attacks, difficulty with memory, is easily overwhelmed, and needed frequent re-iterations of instructions, however, the treatment records do not support and are inconsistent with this note (1F; 2F; 4F; 6F; 12F; 13F). Instead, the treatment records note the claimant progressed in his mental health treatment, had unremarkable mental status examination findings during the relevant period, and he testified that he enjoyed cooking and reading (1F; 2F; 6F; 12F; 13F; hearing testimony). Overall, the treatment records are not consistent with the level of limitation in Ms. Lavelle's opinions and they are therefore not persuasive.**

(Tr. 18) (emphasis added).

The ALJ concluded that Kraig had the residual functional capacity to perform a reduced range of medium work. (Tr. 19.) The RFC does not include any mental limitations. (*Id*.)

11

### IV. Plaintiff's Objection

Kraig argues that the ALJ committed legal error when she failed to properly evaluate the October 2019 opinion of NP Lavelle. (Doc. No. 14.) Specifically, Kraig maintains that, under the applicable regulations, an ALJ is required to clearly articulate her reasoning for finding a medical opinion unpersuasive by applying the factors set forth in 20 C.F.R. § 404.1520c(c). (*Id*.) He asserts that the ALJ's evaluation of NP Lavelle's October 2019 opinion is insufficient because it was conclusory and unsupported by specific citations to the record. (*Id*.) Kraig further argues that the ALJ's failure to clearly articulate her reasoning is not cured by the fact that, earlier in the decision, she discussed the medical evidence with specific citation to the record. (*Id*.) Lastly, Kraig argues that the ALJ's failure to specifically consider NP Lavelle's and NP Kendig's opinions of moderate limitations constitutes clear error. (*Id*. at p. 3-4.)

In response, the Commissioner states that "the Magistrate Judge correctly applied the pertinent law and found that the ALJ's decision is supported by substantial evidence in the record." (Doc. No. 15.)

At Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s)."[7] 20 C.F.R. § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff;[8] (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). Because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Although these regulations are less demanding than the former rules governing the evaluation of medical source opinions, "they still require that the ALJ provide a coherent explanation of [his] reasoning." *Lester v. Saul*, 2020 WL 8093313 at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506 at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure ... to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability determination was supported by substantial evidence." *Vaughn v.*

---

[7] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

[8] This includes consideration of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship. 20 C.F.R. 404.1520(c)(c)(3)(i) through (v).

*Comm'r of Soc. Sec.*, 2021 WL 3056108 at *11 (W.D. Tenn. July 20, 2021). *See also Childers v. Kijakazi*, 2022 WL 2706150 at * 5 (E.D. Ky. July 12, 2022) ("When the Court is unable to follow the ALJ's logic, error has occurred.") That being said, an ALJ need not specifically use "magic words" (such as the terms "supportability" or "consistency") in his or her analysis. *See Hardy v. Comm'r of Soc. Sec.,* 2021 WL 4059310 at *2 (S.D. Ohio Sept. 7, 2021); *Terry Q. v. Comm'r of Soc. Sec.*, 2022 WL 969560 at * 5 (S.D. Ohio March 31, 2022); *Fowler v. Comm'r of Soc. Sec.*, 2022 WL 3648436 at * 9 (N.D. Ohio Aug. 9, 2022), *report and recommendation adopted by* 2022 WL 3647771 (N.D. Ohio Aug. 24, 2022).

The Court finds the ALJ properly evaluated NP Lavelle's October 2019 opinion. As set forth at length above, the ALJ fully evaluated and discussed the evidence relating to Kraig's mental health impairments at Step Three. (Tr. 15-17.) Notably, the ALJ specifically cited and discussed both NP Kendig's and NP Lavelle's treatment records from 2018 through 2019. (Tr. 17.) The ALJ noted the largely normal mental status examination findings from these visits, as well as Kraig's own statements that he was in "a good place" and that his anxiety was "under control with prescribed medication." (*Id.*) In a subsequent paragraph evaluating NP Lavelle's October 2019 opinion, the ALJ found that "the treatment records do not support and are inconsistent with" that opinion, explaining that "the treatment records note that the claimant progressed in his mental health treatment, had unremarkable mental status examination findings during the relevant period, and [Kraig] testified that he enjoyed cooking and reading." (Tr. 18.)

The Court rejects Kraig's argument that the ALJ's evaluation is insufficient because the ALJ failed, in the particular paragraph addressing NP Lavelle's opinion, to pinpoint and discuss the specific treatment records that she believed to be inconsistent therewith. As the Magistrate Judge

correctly notes, the ALJ was not required to restate her discussion of Kraig's treatment records a second time when she explained why she found that NP Lavelle's October 2019 opinion was not supported by, and inconsistent with, the record. *See, e.g., Crum v. Comm'r of Soc. Sec.,* 660 Fed. Appx. 449, 457 (6th Cir. 2016). Rather, "it suffices that she listed them elsewhere in her opinion." *Id.* (citing *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. Appx. 359, 366 (6th Cir. 2014)). *See also Pierce v. Comm'r of Soc. Sec.*, 2019 WL 2331326 at * 8 (N.D. Ohio May 2, 2019) ("While the ALJ is required to consider every piece of medical evidence, she is not required to repeat each piece of medical evidence when evaluating a medical opinion.") *report and recommendation adopted by* 2019 WL 2330567 (N.D. Ohio May 31, 2019). Indeed, it is well established that the Court is to consider an ALJ's decision as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum*, 660 Fed. Appx. at 457 (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). As the Sixth Circuit has explained, "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 440 (6th Cir. 2012).

Here, reading the portion of the ALJ's decision regarding NP Lavelle's opinion in the context of the decision as a whole, the Court finds that the ALJ sufficiently articulated her reasons for finding that NP Lavelle's October 2019 opinion was not supported by, and inconsistent with, the record. NP Lavelle opined that Kraig had severe limitations in seventeen separate categories of mental functioning, including his abilities to remember and understand procedures and instructions, maintain attention, perform at a consistent pace, and deal with the stress of semiskilled and skilled work. (Tr.

511-512.) The ALJ expressly noted that NP Lavelle's opinion was inconsistent with Kraig's "unremarkable mental status examination findings in the record." (Tr. 18.) One page earlier in the decision, the ALJ recounted these unremarkable findings, which were documented in NP Lavelle's own treatment notes. (Tr. 17.) Notably, the unremarkable examination findings found by both NPs Kendig and Lavelle included normal attention/concentration, good judgment, and an open and cooperative attitude. (Tr. 17.) In light of the above, the Court finds that the ALJ adequately articulated her grounds for finding NP Lavelle's opinion unpersuasive.

Kraig asserts, however, that remand is nonetheless required because the ALJ failed to acknowledge or address the fact that NP Kendig assessed moderate functional limitations in November 2018, which were then repeated in NP Lavelle's treatment notes from 2019. (Doc. No. 14 at p. 3-4.) The Magistrate Judge rejected this argument, finding that "while the ALJ did not specifically discuss the lists of 'moderate' symptoms and functional limitations contained in the medication management records for NP Kendig and NP Lavelle, it is clear from the ALJ's Step Three analysis that she generally reviewed and considered Kraig's medication management records as a whole." (Doc. No. 13 at p. 24.) The Magistrate Judge further noted that "the 'moderate' findings highlighted by Kraig do not conflict with the ALJ's ultimate finding that 'the treatment records are not consistent with the level of limitation in [NP] Lavelle's opinions.'" (*Id*.) (citing Tr. 18.)

The Court agrees with the Magistrate Judge. While an ALJ is required to consider the record as a whole, she is not "required to discuss every piece of evidence in the record for [her] decision to stand." *Thacker v. Comm'r of Soc. Sec.,* 99 Fed. Appx. 661, 665 (6th Cir. 2004). *See also Rottman v. Comm'r of Soc. Sec.*, 817 Fed. Appx. 192, 195-196 (6th Cir. 2020) ("Rottmann's arguments that the ALJ failed to address certain findings in her doctors' reports are misplaced. *** Here, the ALJ's

16

analysis demonstrates that he carefully reviewed the record, including Dr. Verma's notes and the self-reported activities from Rottmann. The ALJ's decision may stand even though he did not expressly reference every piece of evidence in the record.")

As discussed above, in her November 2018 treatment note, NP Kendig stated that Kraig had the following "moderate" impairments: (1) inhibition in social situations, (2) "inability to work," (3) difficulty completing activities of daily living, and (4) "difficulty having fun." (Tr. 373.) This list of moderate impairments was repeated, verbatim, in NP Lavelle's subsequent treatment notes. In the decision, the ALJ expressly cited and discussed NP Kendig's November 2018 treatment note, as well as NP Lavelle's treatment notes from March, May, June, and September 2019. (Tr. 17.) The ALJ did not, however, specifically address the moderate functional limitations contained therein. For the following reasons, the Court finds that it is clear from a review of the decision as a whole that the ALJ thoroughly reviewed these treatment notes and found that they failed to provide support for the severe limitations set forth in NP Lavelle's October 2019 opinion.

As the Magistrate Judge correctly notes (and Kraig does not dispute), the moderate limitations set forth in Kraig's various treatment records are not consistent with the extreme limitations proposed by NP Lavelle in her October 2019 opinion. (Doc. No. 13 at p. 24.) While the ALJ did not specifically discuss this particular inconsistency in the decision, she did generally find that "the treatment records are not consistent with level of limitation in [NP] Lavelle's opinions and are, therefore, not persuasive." (Tr. 18.) The Court concludes that, in so finding, the ALJ implicitly recognized the internal inconsistency between the moderate limitations assessed in NP Kendig's and NP Lavelle's treatment notes and the extreme limitations proposed by NP Lavelle in her October 2019 opinion.

17

The Court further finds that this internal inconsistency is an adequate basis for rejecting NP Lavelle's October 2019 opinion.  *See, e.g., Norris*, 461 Fed. Appx. at 440.

The Court also finds that the ALJ adequately explained why she decided not to assess the moderate mental functional limitations contained in Kraig's treatment notes in the RFC itself.  (Tr. 15-17.)  At Step Three, the ALJ found that Kraig did not have any limitations in the area of "interacting with others," explaining that (1) Kraig did not allege any problems relating to this area of functioning; (2) his own statements indicate that he is able to get along with others, shop, and spend time with friends and family; and (3) "the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." (Tr. 15.) This discussion supports a finding that the ALJ considered and discounted NP Kendig's and NP Lavelle's assessment that Kraig was moderately limited in the area of "inhibitions in social situations."  (Tr. 373.)

The ALJ also found that Kraig had no limitations in his ability to "adapt or manage himself" and only mild limitations in "understanding, remembering, or applying information."  (Tr. 15.)  In support of these findings, the ALJ cited evidence that Kraig could "prepare meals, pay bills and collect rents, go to doctor's appointments, take medications, shop, drive, read, play racquetball, and care for his 8 month old grandson."  (Tr. 15.)  This discussion supports a finding that the ALJ considered and discounted NP Kendig's and NP Lavelle's assessment that Kraig was moderately limited in his ability to complete activities of daily living.  (Tr. 373.)

Finally, reading the decision as a whole, it is clear that the ALJ discounted NP Kendig's and NP Lavelle's vague assessment that Kraig was moderately limited in his "ability to work." (Tr. 373.) Throughout the decision, the ALJ noted that Kraig's providers found no evidence of distractibility,

18

problems with attention or concentration, or memory issues. (Tr. 15, 17.) The ALJ also cited evidence that Kraig's sleep was improving with medication and treatment, as was his anxiety and depression. (Tr. 17.) Lastly, the ALJ relied on the opinions of the state agency consultants that Kraig had no more than mild mental limitations, finding that these opinions were consistent with the medical records and "the overall evidence including the claimant's testimony that he is able to live independently, perform household chores, enjoys reading and cooking, watches his 8-month old grandson on a regular basis, cares for pets, and otherwise lives independently." (Tr. 17-18.)

In sum, the Court finds that that the ALJ fully evaluated the record as a whole and properly discounted NP Lavelle's October 2019 opinion, as well as NP Kendig's and NP Lavelle's assessment of moderate limitations. The ALJ sufficiently articulated the basis of her findings and her decision to reject the moderate and severe mental limitations proposed by these providers is supported by substantial evidence in the record. Kraig's Objections are not well taken.

### IV. Conclusion

For all the foregoing reasons, Plaintiff's Objections (Doc. No. 14) are overruled and the Magistrate Judge's Report and Recommendation (Doc. No. 13) is accepted. The Commissioner's final determination denying Plaintiff's applications for disability benefits is supported by substantial evidence and is affirmed.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
PAMELA A. BARKER
Date: September 14, 2022    U. S. DISTRICT JUDGE